UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **Farnandon D. White,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   Civil No. 14-cv-00871 (APM) |
| | ) |
| **Washington Nursing Facility,** | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

### I.   INTRODUCTION

Plaintiff Farnandon D. White brought this lawsuit *pro se* against his former employer Washington Nursing Facility ("WNF"). He generally alleges that, as a black male certified nursing aide ("CNA"), he was treated differently from his mostly black female colleagues, harassed, and ultimately terminated for filing charges of discrimination with the Equal Employment Opportunity Commission ("EEOC"). Rightly construing the complaint as brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, WNF contends that it is entitled to summary judgment because White was fired for the legitimate reason of falsifying resident care records.[1] *See generally* Def.'s Mot. for Summ. J. [hereinafter Def.'s Mot.], ECF No. 36. White counters that summary judgment is inappropriate because the asserted reason is "contradictory and

---

[1] White has not designated his claims by separate counts and stated the basis of federal court jurisdiction. *See* Am. Compl., ECF No. 4; Compl, ECF No. 1. But "[p]leadings must be construed so as to do justice," Fed. R. Civ. P. 8(e), and the EEOC's right to sue notice attached to the complaint suffices to bring the complaint within the court's original jurisdiction under 28 U.S.C. § 1331.

pretext[ual]."  Pl.'s Opp'n to Def.'s Mot. for Summ. J. [hereinafter Pl.'s Opp'n], ECF No. 39, at 15.

Based on its review of the evidence, the court holds that no reasonable jury could find that WNF's stated reason for terminating White was a pretext for unlawful discrimination or retaliation. The court also finds that White has failed to carry his burden with respect to his hostile work environment claim.  The court therefore grants WNF's motion with respect to the federal claims. Pursuant to 28 U.S.C. § 1367(c)(3), the court declines to exercise supplemental jurisdiction over any remaining state law claims.  *See generally* Am. Compl., ECF No. 4 (asserting wrongful termination and workplace harassment).

## II.     BACKGROUND

### A.     Factual Background

At the relevant time period, WNF was "a duly licensed and certified skilled nursing facility in the District of Columbia," subject to oversight by the D.C. Department of Health.  Def.'s Stmt. of Material Facts [hereinafter Def.s' SMF], ECF No. 36, ¶¶ 1, 12.  White started his employment with WNF on June 21, 2010, working the day shift—7 a.m. to 3:30 p.m.  His job entailed assisting WNF residents with their daily care and activities.  White's specific tasks included taking the residents' vital signs; checking their diapers every two hours and, if necessary, changing them; transferring the residents to and from their beds and wheelchairs; and repositioning them on a regularly scheduled basis to prevent bedsores.  Def.'s Ex. 3, Deposition of Farnandon D. White [hereinafter White Dep.] 19-20, 30-31, ECF No. 36-1 at 11, 14; Def.'s Ex. 4, Decl. of Nancy Casanas [hereinafter Casanas Decl.] ¶¶ 14-16, ECF No. 36-1 at 30.  In addition, White observed the residents and reported any changes in their condition to the nursing staff.  White Dep. 28-29, ECF No. 36-1 at 13.

All nursing aides were required to document the care provided each resident throughout each shift, using a computerized system known as Point of Care ("POC"). Def.'s SMF ¶¶ 10-11. The POC system enabled the production of reports on the specific care of each resident based on the information entered by the aide; it also generated audit reports, showing the actual time the aide entered the information into the system. *Id*. ¶¶ 21-22. The nursing aide accessed the system by entering his employee code into a computer touch screen on the nursing unit. Once in the system, the aide was provided a list of residents assigned to him on that particular shift and each resident's care needs. *Id*. ¶¶ 13-16. Each task was identified by an icon on the computer screen, which the aide pressed once the task was completed. The system would then record the task as having been performed. *Id*. ¶¶ 16-17. "Many of the CNA care tasks, such as turning and repositioning and toileting, [were required to] take place on a regularly scheduled basis throughout each shift." Casanas Decl. ¶16, ECF No. 26-1 at 30. Thus, the "expectation [was] that entries [were] made into the system at or near the end of the CNA's shift, when all care tasks to be completed on the shift [were] in fact [ ] completed." Def.'s SMF ¶ 23.

Between February 2011 and June 2013, White received nine notices of unacceptable conduct, and he received Job Performance Employee Counseling on several occasions. *Id*. ¶¶ 39-53. Job Performance Employee Counseling consisted of four tiers: Informal Counseling; Formal Counseling; Second Formal Counseling and Final Warning; and immediate discharge. Def.'s Ex. 7, WNF's Requests for Admissions [hereinafter WNF's Req. for Admis.], Ex. 1, ECF No. 36-1 at 55. On April 19, 2013, White received Formal Counseling based on a nurse's report that he had failed to feed a resident by 10:15 a.m., and a resident's complaint that "he had left her exposed in bed while he went to care for others." Def.'s SMF ¶ 48. On April 24, 2013, White received Second Formal Counseling and a one-day suspension without pay based on a resident's complaint that she

3

had not received assistance more than six hours after the day shift had begun. *Id.* ¶ 49. White was then warned that he would be discharged if he "continue[d] to display inadequate job performance within the next six (6) months." *Id.* ¶ 50. White responded by disagreeing with "these false accusation[s]." WNF's Req. for Admis., Ex. 6, ECF No. 36-1 at 65. On June 27, 2013, White again received Second Formal Counseling based on his failure to complete distributing lunches to the residents in their rooms; he was again warned that he would be discharged in six months if his performance did not improve. Def.'s SMF ¶ 53. White responded: "this is farther harassment by staffing and management. I will submit written responses in a few days." WNF's Req. for Admis., Ex. 2, ECF 36-1 at 57.

On September 4, 2013, White, an African American man, filed a charge with the EEOC, alleging discrimination based on his race, color, sex, and national origin between January 1, 2011, and June 28, 2013, "and continuing." Def.'s Ex. 15, Not. of Charge of Discrimination, ECF 36-1 at 114. WNF Administrator Gail Jernigan received the EEO complaint but "did not view [it] as being meritorious because [White] was a black male and virtually one hundred percent of the work force at WNF at the time was black." Def.'s Ex. 1, Decl. of Gail Jernigan [hereinafter Jernigan Decl.] ¶ 17, ECF No. 36-1 at 4. Jernigan "passed [the] EEO complaint on to corporate counsel and gave it no further thought." *Id.* ¶ 18.

On October 3, 2013, a POC Audit Report showed that White "[had] documented that he had provided all of the care for all nine of the residents assigned to him during the 7 a.m. to 3:30 p.m. shift by 9:23 a.m.—less than two and one-half hours after the shift began and more than six hours before it was over." Casanas Decl. ¶ 22, ECF No. 26-1 at 31. The report further revealed that White had made all of the entries between 8:49 a.m. and 9:23 a.m., even though some of the care services "would had to have been provided . . . throughout the day shift, as indicated by the

'Scheduled Time' column on the report." *Id*. ¶¶ 23-24.  On that same day, in consultation with WNF's Directors of Nursing and Human Resources, Jernigan made the decision to terminate White "for blatantly falsifying resident care information in the POC system." Jernigan Decl. ¶ 11, ECF No. 36-1 at 3; *see* White Dep. 27, ECF No. 36-1 at 13 (agreeing that he was terminated "for the documentation").  The Facility's Employee Handbook "specifies as grounds for immediate discharge willful false recordkeeping and willful neglect of duty."  Jernigan Decl. ¶ 14, ECF No. 36-1 at 3; Def.'s Ex. 9, Employee Handbook, ECF No. 36-1 at 102 (listing examples of dishonesty that "normally will result in immediate discharge from our employ," including "willful falsification of any pay, time, business, expense or employment record").

      **B.**     **Procedural Background**

Following his termination, White filed another charge with the EEOC on October 22, 2013, asserting retaliation.  Def.'s Ex. 16, ECF No. 36-1 at 117.  He also filed a grievance with Teamsters Local Union 639 on October 6, 2013, claiming that his termination was retaliatory and unjustified. WNF's Req. for Admis., Exs. 13 and 14, ECF No. 36-1 at 79, 81.

On January 29, 2014, the EEOC issued a Dismissal and Notice of Rights, informing White that it could not conclude from its investigation that any federal statutes were violated.  Def.'s Ex. 17, ECF No. 36-1 at 119.  White initiated this civil suit by lodging his complaint and a motion to proceed *in forma pauperis* with the Clerk of Court on April 25, 2014.  On September 15, 2014, the court denied WNF's initial motion to dismiss the complaint as untimely.  ECF No. 9. Following a period of discovery, WNF filed the pending motion for summary judgment, which is now ripe for consideration.

### III.  LEGAL STANDARD

Summary judgment will only be granted if the movant can show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  In making this determination, the court reviews all "[u]nderlying facts and inferences . . . in the light most favorable to the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).  A dispute is "genuine" only if a reasonable fact-finder could find for the nonmoving party, while a fact is "material" only if it is capable of affecting the outcome of litigation.  *Id.* at 248.  A non-material factual dispute is insufficient to prevent the court from granting summary judgment.  *Id.*

The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion" and identifying those portions of the record that it believes "demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once the moving party has made an adequate showing that a fact cannot be disputed, the burden shifts to the party opposing summary judgment to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250 (citation and internal quotation marks omitted) (footnote omitted).

The nonmoving party may oppose the motion using "any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves, and it is from this list that one would normally expect the nonmoving party to make the showing to which [the Court has] referred." *Celotex*, 477 U.S. at 324.  "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255 (citations omitted). However, "to defeat a motion for summary judgment, the non-moving party must offer more than mere unsupported allegations or denials." *Dormu v. District of Columbia*, 795 F. Supp. 2d 7, 17

6

(D.D.C. 2011) (citing *Celotex*, 477 U.S. at 324). In other words, if the non-movant's evidence is "merely colorable" or "not significantly probative," summary judgment may be granted. *Anderson*, 477 U.S. at 249-50. Summary judgment, then, is appropriate when the nonmoving party fails to offer "evidence on which the jury could reasonably find for the [non-movant]." *Id*. at 252. Rule 56 also "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, [ ] on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322-23 (1986).

## IV. DISCUSSION

Under Title VII, an employer may not "discharge any individual, or otherwise . . . discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). In addition, under Title VII's anti-retaliation provision, an employer may not "discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." *Id*. § 2000e–3(a).

Stating a *prima facie* case of discrimination or retaliation is not difficult. For discrimination, a plaintiff need only show that he is a member of a protected class who suffered an adverse employment action that gives rise to an inference of discrimination. *Stella v. Mineta*, 284 F.3d 135, 145 (D.C. Cir. 2002). For retaliation, a plaintiff must show that he engaged in activity protected under Title VII and, as a direct consequence, suffered an adverse employment action. *Forkkio v. Powell*, 306 F.3d 1127, 1131 (D.C. Cir. 2002). "[A]n employee's retaliation

7

claim does not rise or fall on the success of [his] underlying, good-faith discrimination claim." *Nurriddin v. Bolden*, 818 F.3d 751, 757, n.5 (D.C. Cir. 2016); *see Childers v. Slater*, 44 F. Supp. 2d 8, 23 (D.D.C. 1999) (noting "that a retaliation claim is independent of any underlying discrimination claim in that an employee may bring a retaliation suit even if the underlying discrimination claim is unsuccessful").

A Title VII claim may be proven by direct or circumstantial evidence. *Nurriddin*, 818 F.3d at 758. "Direct evidence of discriminatory intent [*e.g.*, a statement expressing racial or gender bias] alone is sufficient to survive summary judgment." *Robinson v. Red Coats, Inc.*, 31 F. Supp. 3d 201, 216 (D.D.C. 2014) (citing *Stone v. Landis Constr. Corp.*, 442 Fed. Appx. 568, 569 (D.C. Cir. 2011) (per curiam)). But where, as here, the record contains no direct evidence of discrimination or retaliation, Title VII claims are analyzed under the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Mastro v. Potomac Elec. Power Co.*, 447 F.3d 843, 850 (D.C. Cir. 2006); *accord Jones v. Bernanke*, 557 F.3d 670, 677 (D.C. Cir. 2009). Under that framework, the plaintiff bears the initial burden of pleading a *prima facie* case of discrimination or retaliation. If he succeeds, the burden shifts to the defendant to "articulate some legitimate, nondiscriminatory reason" for the adverse employment action.

"At the summary judgment stage, once the employer has claimed a nondiscriminatory reason for its actions, th[e] burden-shifting framework disappears," *Nurriddin*, 818 F.3d at 758, and "the question whether the employee actually made out a prima facie case is no longer relevant," *Brady v. Office of Sergeant at Arms*, 520 F.3d 490, 493-94 (D.C. Cir. 2008) (citations and internal quotation marks omitted). The key question for the court to resolve is whether "the employee [has] produced sufficient evidence for a reasonable jury to find that the employer's asserted non-discriminatory reason was not the actual reason and that the employer intentionally

discriminated against the employee on the basis of race" or some other prohibited ground. *Id*. at 494 (citations omitted). "At this point, to survive summary judgment the plaintiff must show that a reasonable jury could conclude from all of the evidence that the adverse employment decision was made for a discriminatory [or retaliatory] reason." *Mastro*, 447 F.3d at 855 (citations and internal quotation marks omitted). Courts consider this issue "in light of the total circumstances of the case," asking

> whether the jury could infer discrimination from the combination of (1) the plaintiff's prima facie case; (2) any evidence the plaintiff presents to attack the employer's proffered explanation for its actions; and (3) any further evidence of discrimination that may be available to the plaintiff . . . or any contrary evidence that may be available to the employer.

*Hamilton v. Geithner*, 666 F. 3d 1344, 1351 (D.C. Cir. 2012) (quoting *Aka v. Wash. Hosp. Ctr.*, 156 F.3d 1284, 1289 (D.C. Cir. 1998) (internal quotation marks omitted)); *see also Nurriddin*, 818 F.3d at 758. In contrast to the "motivating-factor standard" applicable to the discrimination claim, the "Title VII retaliation claim[] require[s] proof that the desire to retaliate was the *but-for* cause of the challenged employment action." *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2527, 2528 (2013) (emphasis supplied).

WNF has asserted a legitimate, non-discriminatory reason for White's termination: his falsification of resident care records, which the Employee Handbook specifies as a ground for immediate termination.[2] Thus, whether White has made out a *prima facie* case is no longer relevant, and the court turns directly to the issue of whether he has produced evidence sufficient — under a preponderance of the evidence standard — for a reasonable jury to find that WNF's stated reason was not the actual reason for his termination but rather a pretext for discrimination

---

[2] In her declaration dated October 27, 2015, the decision-maker suggests that White was terminated also for a "long history of poor job performance[.]" Jernigan Decl. ¶ 19 ECF No. 36-1 at 3. But it is an undisputed fact that the falsification of records was the sole reason given at the relevant time of White's termination. *See* Def.'s SMF ¶¶ 24, 38; White Dep. 225-228, ECF No. 36-1 at 27. Thus, the court's analysis is based only on that reason.

9

or retaliation. *See Brady*, 520 F.3d at 495; *see also Teneyck v. Omni Shoreham Hotel*, 365 F.3d 1139, 1154 (D.C. Cir. 2004) ("[O]nce the defendant has responded with rebuttal evidence, the factfinder normally proceeds to the ultimate issue on the merits to determine whether the employer intentionally discriminated against the plaintiff.").

A plaintiff can successfully demonstrate that his employer's explanation for an adverse action is pretext "by showing that a non-discriminatory reason offered by a defendant is false, or otherwise presenting enough evidence to allow a reasonable trier of fact to conclude that the employer's proffered explanation is unworthy of credence." *Chavers v. Shinseki*, 667 F. Supp. 2d 116, 124-25 (D.D.C. 2009) (citations and internal quotation marks omitted); *accord George v. Leavitt*, 407 F.3d 405, 413 (D.C. Cir. 2005) (citing *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 256 (1981)). A plaintiff must not only show that the reason offered was pretext generally, but more specifically, was pretext for discrimination or retaliation. *Cones v. Shalala*, 199 F.3d 512, 519 (D.C. Cir. 2000). "In other words, it is not enough to disbelieve the employer; the factfinder must believe the plaintiff's explanation of intentional discrimination." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 147 (2000).

In order to show that a reason is not only pretext, but pretext for discrimination or retaliation, a plaintiff may present evidence that allows "the trier of fact to infer the ultimate fact of discrimination [or retaliation] from the falsity of the employer's explanation." *Id.* Such evidence may include:

> the employer's better treatment of similarly situated employees outside the plaintiff's protected group, its inconsistent or dishonest explanations, its deviation from established procedures or criteria, [ ] the employer's pattern of poor treatment of other employees in the same protected group as plaintiff, or other relevant evidence that a jury could reasonably conclude evinces an illicit motive.

*Wheeler v. Georgetown Univ. Hosp.*, 812 F.3d 1109, 1115 (D.C. Cir. 2016) (quoting *Walker v. Johnson*, 798 F.3d 1085, 1092 (D.C. Cir. 2015) (internal quotation marks omitted)). Ultimately, however, where "the employer's stated belief about the underlying facts is reasonable in light of the evidence . . . there ordinarily is no basis for permitting a jury to conclude that the employer is lying about the underlying facts." *Brady*, 520 F.3d at 495. In other words, "an employer's action may be justified by a reasonable belief in the validity of the reason given even though that reason may turn out to be false." *George*, 407 F.3d at 415; *see also Fischbach v. D.C. Dep't of Corr.*, 86 F.3d 1180, 1183 (D.C. Cir. 1996) ("Once the employer has articulated a non-discriminatory explanation for its action . . . the issue is not the correctness or desirability of the reasons offered but whether the employer honestly believes in the reasons it offers.").

  **A.** **Discrimination Claim**

  White has produced no evidence refuting the October 3, 2013, Audit Report forming the basis of the termination decision. Although the circumstances giving rise to the audit on that particular day are unexplained, the report establishes that White recorded a day's worth of care—7 a.m. to 3:30 p.m.—within a thirty-minute time frame just two hours within his shift. White explains that he "never falsified any documentation" since "no one ever told him to document at a certain time" or that "his documentation was wrong." Pl.'s Opp'n at 4. White continues that the training manager in fact told him: "'you can document and change it at any time, if he made a mistake he could correct it that's what the edit button is for.'" *Id*. Thus, he "took notes while giving care with the understanding that he could document and make changes if need be throughout the day." *Id*. at 3. White faults WNF for not producing "any documentation errors" on the day he was fired and "contends his documentation was complete and accurate at the end of his shift on October 3, 2013 and at all times." *Id*. at 4. White suggests that WNF's management has

"tamper[ed] with the paperwork[.]" Thus, "if documentation is missing and/or incorrect that mystery would be with the Defendants, only Defendants have access to this information." *Id*. According to White, when WNF produced the morning portion of the documentation some sixty days later, it was "incomplete and incorrect." *Id*. Finally, in his opposition filed on November 27, 2015, White contends that he "was not extended the same rights as the other employees of keeping his job," and he cites as an example "L. Marshall [a female] who is currently employed with WNF [and] documented her care prior to the time allowed." *Id*.

White's explanation of his conduct is of no material consequence if WNF honestly believed that it had a valid basis for firing him. *See Steele v. Carter*, No. 13-cv-01229, 2016 WL 3620722, at *20 (D.D.C. June 29, 2016) (examining cases). White has adduced no evidence contradicting his employer's honestly held belief that he falsified patient care entries and, in so doing, exhibited dishonesty, which the Employee Handbook lists as a ground for immediate discharge. Thus, no reasonable jury presented with these facts could find that WNF's reason for terminating White was pretextual.

As importantly, White has adduced no evidence from which a reasonable jury could find or infer that the termination decision had anything to do with his race or gender. He has not corroborated the one pertinent allegation of gender-based discrimination—his being treated differently from L. Marshall for the same conduct—with any evidence. "In order to successfully use similarly situated individuals to establish pretext and thus raise an inference of discrimination, a plaintiff must establish that 'all of the relevant aspects of [his] employment situation were nearly identical to those' of the comparators." *Steele*, 2016 WL 3620722, at *11 (quoting *Neuren v. Adduci, Mastriani, Meeks & Schill*, 43 F.3d 1507, 1514 (D.C. Cir. 1995) (alteration added)). "Factors that bear on whether someone is an appropriate comparator include the similarity of the

plaintiff's and the putative comparator's jobs and job duties, whether they were disciplined by the same supervisor, and, in cases involving discipline, the similarity of their offenses." *Burley v. Nat'l Passenger Rail Corp.*, 801 F.3d 290, 301 (D.C. Cir. 2015). Although White compares his employment situation with Marshall's, Pl.'s Opp'n at 7, he has not offered any evidence to corroborate his claim that Marshall falsified patient care records and yet was not fired. Thus, the court concludes that WNF is entitled to judgment as a matter of law on the discrimination claim.

### B. Retaliation Claim

In the retaliation context, a plaintiff's *prima facie* case must establish: "(1) that []he engaged in a statutorily protected activity; (2) that the employer took an adverse personnel action; and (3) that a causal connection existed between the two." *Mitchell v. Baldrige*, 759 F.2d 80, 86 (D.C. Cir. 1985) (citing *McKenna v. Weinberger*, 729 F.2d 783, 790 (D.C. Cir. 1984)). White's retaliation claim arises from his firing one month after having filed the EEO charge. That short span of time between the charge and the termination can establish the causation element for the purpose of making out a *prima facie* case, but "a mere proximity of time between the protected activity and the adverse action is insufficient, without more, to withstand summary judgment." *Steele*, 2016 WL 3620722, at *20 (citing *Talavera v. Shah*, 638 F.3d 303, 313 (D.C. Cir. 2011)). As with the discrimination claim, the crucial question at this stage is whether White has produced sufficient evidence to rebut the legitimate non-retaliatory reason WNF has offered for his termination. The retaliation claim will not survive summary judgment if the defendant is able to "demonstrate it would have reached the same decision absent the prohibited discrimination." *Hampton v. Vilsack*, 760 F. Supp. 2d 38, 53 (D.D.C. 2011).

The decision-maker, Jernigan, avers that she passed White's EEO complaint dated September 4, 2013, "on to corporate counsel and gave it no further thought" because White and

"virtually one hundred percent of the work force at WNF" were of the same race. Jernigan Decl. ¶ 17, ECF No. 36-1 at 4. Jernigan fired White one month later based on the Employee Handbook's no-tolerance policy for dishonesty, which included "as grounds for immediate discharge willful false recordkeeping[.]" *Id*. ¶ 14. As with the discrimination claim, White has adduced no evidence contradicting his employer's honestly held belief that he had falsified patient records and thus exhibited dishonesty. Moreover, he has not offered any evidence beyond the timing of his termination from which a trier of fact could infer that the actual reason for his termination was his protected activity. The court therefore finds that no reasonable jury could find or infer that but for White's protected activity, he would not have been fired for falsifying patient care records. Thus, the court concludes that WNF is entitled to judgment as a matter of law on the retaliation claim.

      C.     **Hostile Work Environment Claim**

Throughout his complaint and opposition, White mentions retaliation and harassment seemingly in support of a hostile work environment claim. He bases this claim on the multiple infractions he received between 2011 and 2013. *See* Pl.'s Opp'n at 1 (stating that "[w]hen he complained about being treated in a discriminatory fashion, the harassment increased to the point where a week rarely went by when he was not written up for some infraction").

"To prevail on [a hostile work environment] claim [under Title VII], a plaintiff must show that his employer subjected him to 'discriminatory intimidation, ridicule, and insult' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Baloch v. Kempthorne*, 550 F.3d 1191, 1201 (D.C. Cir. 2008) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (other citations omitted)). As indicated above, *see* pg. 9 n.2, *supra*, the prior infractions were not the stated ground for White's

firing and thus presumably did not alter the conditions of his employment (save the one-day suspension). Nevertheless, summary judgment is properly granted against a party who "after adequate time for discovery and upon motion . . . fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. White has not pointed to evidence in the record to support the essential elements of a hostile work environment claim. And no reasonable jury could find or infer from the nine infractions issued over the course of two years that White's workplace was "sufficiently severe, pervasive, or abusive to create either a retaliatory or a discriminatory hostile work environment." *Steele*, 2016 WL 3620722, at *21 (citation omitted). Thus, the court will grant summary judgment to WNF on the hostile work environment claim.

## V.     CONCLUSION

For the reasons discussed above, Defendant's Motion for Summary Judgment is granted on the federal claims. Having disposed of those claims, the court declines to exercise supplemental jurisdiction over any remaining state law claims. A separate Order accompanies this Memorandum Opinion.

Dated: August 31, 2016

Amit P. Mehta
United States District Judge